# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CIFUENTES, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>CEVA LOGISTICS U.S., INC.,<br><br>Defendant. | Case No.: 3:16-cv-01957-H-DHB<br><br>**ORDER**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; and**<br><br>**(3) APPROVING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENT**<br><br>[Doc. Nos. 20, 21, 22] |

On August 3, 2016, Plaintiff William Cifuentes ("Plaintiff") filed a purported class action complaint against Defendant CEVA Logistics U.S., Inc. ("CEVA") alleging violations of various wage and hour provisions of the California Labor Code, as well as the California Unfair Competition Law. (Doc. No. 1.) Subsequently, after private mediation,

1

the parties reached a tentative settlement agreement. (Doc. No. 16-5.) On June 12, 2017, the Court granted preliminary approval of the settlement, provisionally certified a settlement class under Federal Rule of Civil Procedure 23(b)(3), and approved the form and manner of notice. (Doc. No. 19.)

On July 6, 2017, Plaintiff filed unopposed motions for attorneys' fees, litigation costs, and an incentive award. (Doc. Nos. 20, 21.) On September 25, 2017, Plaintiff filed an unopposed motion for final approval of the settlement. (Doc. No. 22.) On October 23, 2017, the Court held a fairness hearing. No class member filed an objection, and no objectors appeared at the hearing. Joshua G. Konecky appeared for Plaintiff. Fraser A. McAlpine appeared for CEVA. For the reasons that follow, the Court certifies the settlement class, grants final approval of the class settlement, and approves Plaintiff's request for attorneys' fees, costs, and an incentive award.

## BACKGROUND

**I. Settlement Details**

This is a wage and hour class action filed on behalf of all individuals who have performed one or more deliveries in California for CEVA, while being classified as an independent contractor, no more than four years prior to the filing of the Complaint. (Doc. No. 1.) CEVA is a delivery company headquartered in Jacksonville, Florida, and engages in delivery services in California. (Id. ¶ 10.) Plaintiff claims that CEVA improperly categorized class members as independent contractors, rather than as employees, and as a result denied them the rights and protections afforded by the California Labor Code. (Id. ¶ 2.) Additionally, Plaintiff claims that CEVA failed to make meal and rest periods available to class members, did not provide accurate, itemized wage statements, and failed to reimburse class members for reasonable business expenses. (Ibid.) Lastly, Plaintiff claims CEVA failed to compensate class members for all hours worked, overtime, and full wages upon departure from the company as required by California Labor Code §§ 201, 202, and 203. (Id.) Plaintiff seeks compensation, attorneys' fees, and costs. (Id. ¶¶ 3, 5.)

On June 12, 2017, the Court provisionally certified a settlement class consisting of

"[a]ll individuals who have personally made one or more deliveries for CEVA while being classified by CEVA as an independent contractor, at any time" between August 3, 2012 and February 14, 2017. (Doc. No. 16-5 at PageID 148.) After the Court's preliminary approval order, the Court-appointed Settlement Administrator, JND Class Action Administration LLC ("JND"), issued the Court-approved Settlement Notice (in English and Spanish) to the settlement class members, using the most recent mail and email contact information held by the parties, as updated through data from the National Change of Address (NCOA) database and skip-trace databases. (Doc. No. 22-1, McDermott Decl., ¶¶ 4–7.) JND identified sixty-five unique class members, and was able to effectuate delivery to all but three of the addresses on file. (Id. at ¶ 4, 7.) Class members had sixty days to object to the settlement, raise disputes regarding the calculation of their awards, or opt-out of the settlement altogether. No class member elected to lodge any objections.

Under the proposed settlement, CEVA will pay $1,750,000 to establish a settlement fund to resolve the litigation. (Doc. No. 16-5 at PageID 150.) That amount does not include the employer's share of payroll taxes on any wage payments. (Id. at PageID 159.) The settlement will be divided proportionally according to the number of weeks each class member worked. (Id. at PageID 164.) The class members will receive payment from the settlement fund less administrative costs; payments required under the Private Attorney General Act of 2004 ("PAGA"); a reserve fund; Plaintiff's service award; and attorneys' fees and expenses. (Id. at PageID 165–68.); Cal. Lab. Code § 2699(i). Class members will not have to file claims to receive their payment. (Id. at PageID 164.) The PAGA payment will take $87,500 from the settlement fund and set aside 75% of it for the California Labor Workforce Development Agency (LWDA). (Id. at PageID 167.) The reserve fund will consist of 2% of the settlement fund, and will pay for any late or unexpected claims. (Id. at PageID 165.) Additionally, any remaining finances in the reserve fund will be donated to the parties' agreed upon cy pres beneficiary, Legal Aid at Work (LAAW). (Id. at PageID 164.) The class representative's requested service award is $7,500. (Id. at PageID 166.) The parties agreed to a maximum attorney fee award of $583,333. (Ibid.) Finally, none of

the funds will revert back to Defendant if unclaimed. (Id. at PageID 164.)

In exchange for this compensation, Plaintiff and the class members will release a wide array of potential claims against CEVA. Specifically, the class members will "fully, finally, and forever settle, compromise, and discharge disputes and claims arising from or related to this Action." (Id. at PageID 157.) The released claims include:

> . . . all claims that have been alleged or that could have been alleged in the operative Complaint based on the allegations, claims, facts and/or legal theories raised by the operative Complaint including but not necessarily limited to all of the following claims for relief: (a) violation of California Labor Code §§ 226.7(a) and 512(a) (denial of meal breaks); (b) violation of California Labor Code § 226.7(a) (denial of rest breaks); (c) violation of California Labor Code §§ 200 and 204 (failure to pay compensation for all time worked); (d) violation of California Labor Code §§ 226(a), 1174 and 1175 (inaccurate wage statements); (e) violation of California Labor Code §§ 201–03 (unpaid wages at discharge); (f) violation of California Labor Code §§ 1194 (failure to pay overtime); (g) violation of California Labor Code §§ 221 and 2802 (unreimbursed expenses and unlawful deductions from pay); (h) violations of California Business & Professions Code §§ 17200, et seq.; (i) representative action under the Private Attorneys General Act ("PAGA"); (j) any other claims or penalties under the wage and hour laws pleaded in the Action or that could have been pleaded based on the allegations, claims, facts and/or legal theories alleged therein; (k) all damages, penalties, interest and other amounts recoverable under said causes of action under California and federal law, to the extent permissible, including but not limited to the California Labor Code as to the facts alleged in the operative Complaint, the applicable Wage Orders as to the facts alleged in the operative Complaint, and the California Unfair Competition Law; and (l) claims under PAGA that were or could have been premised on the facts and legal theories raised in the operative Complaint.

(Id. at PageID 152.) Plaintiff agreed to a broader release of claims, which states:

> In exchange for the consideration set forth in this Agreement, Plaintiff Cifuentes for himself and his heirs, successors and assigns, hereby waive[s], release[s], acquit[s] and forever discharge[s] the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, or whatever nature, whether known or unknown, which exist or may exist on Plaintiff's behalf as of the date of this Agreement, including but not limited to any and all tort claims, contract claims, wage claims wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Labor Standards Act, the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the Americans with Disabilities Act, **the Age Discrimination in Employment Act (ADEA)**, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act,

>California Business & Professions Code Section 17200 <u>et seq.</u>, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance.

(<u>Id.</u> at PageID 158 (emphasis in original).)

## II. Class Members' Notice of Settlement

After the Court preliminarily approved the settlement's terms, Defendant provided JND "an electronic file containing, among other information, the names and addresses of individuals identified as Class Members. The file contained a total of 89 records; however, because 13 subcontractors later became owner operators and 11 subcontractors worked for more than one owner operator, the list contained 65 unique Class Members." (Doc. No. 22-1 at ¶ 4.) "Prior to mailing notices, JND updated Class Member address information using data from the National Change of Address (NCOA) database and skip-trace databases. After these updates, a total of 65 Class Members had a complete mailing address[.]" (<u>Id.</u> at ¶ 5.) "Pursuant to the terms of the Settlement Agreement, on July 6, 2017, JND mailed the class action notice in English and Spanish [] via first-class regular U.S. mail to the 65 Class Members identified on the Class Mailing List." (<u>Id.</u> at ¶ 6.) JND mailed a copy of the notice to all but three of the class members, and fielded calls for additional information from twenty-four class members through a toll-free telephone line. (<u>Id.</u> at ¶¶ 7–8.) As of September 25, 2017, JND had not received any objections or requests for exclusion from the class. (<u>Id.</u> at ¶¶ 10, 12.)

## **DISCUSSION**

## I. Class Certification

A class may be certified under Federal Rule of Civil Procedure 23(a) if (1) the class is so numerous that joinder of all members individually is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interest of all members of the class. Furthermore, Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

5

3:16-cv-01957-H-DHB

class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In its order certifying the class, the Court determined that the class met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. No. 19.) The settlement class includes all of the individuals who were potential class members according to the Court's class definition. This settlement allows the parties to provide a potential benefit to each CEVA employee who was allegedly misclassified as an independent contractor in violation of California law.

The settlement class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The class is sufficiently numerous because it contains sixty-five individuals, sixty-two of whom were sent a detailed settlement notice via first class mail. See Gomez v. Rossi Concrete, Inc., 270 F.R.D. 579, 588 (S.D. Cal. 2010) ("In general, courts find numerosity when the class includes at least forty members."); accord Bee, Denning, Inc. v. Capital Alliance Grp., 310 F.R.D. 614, 624 (S.D. Cal. 2015); Abdeljalil v. Gen. Elec. Capital Corp., 306 F.R.D. 303, 308 (S.D. Cal. 2015). Common questions predominate, because: (i) the significant common issue in this case is whether CEVA misclassified class members as independent contractors instead of employees; (ii) the class members all performed substantially similar work, and had a materially similar employment relationship with CEVA; and therefore (iii) if CEVA misclassified some class members, that finding would apply to all class members. See Norris–Wilson v. Delta–T Grp., Inc., 270 F.R.D. 596, 604 (S.D. Cal. 2010) (finding commonality satisfied where main issue in litigation was whether workers who were hired by the defendant and classified as independent contractors were independent contractors or employees). The typicality requirement is satisfied because both Plaintiff and the purported class members held the same position with CEVA and claim the same injuries. See Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Finally, the adequacy requirement is satisfied because Plaintiff has vigorously protected the interests of the class, and Plaintiff's counsel has extensive experience in wage and hour class action litigation.

(See Doc. No. 16-4, Konecky Decl. ¶¶ 3–6.)

The settlement class also meets the predominance and superiority requirements of Rule 23(b)(3). The common question of whether the class members were misclassified as independent contractors predominates over all individual issues, because once that issue is determined on a class-wide basis, the only remaining issues would be determining the amount of damages that each class member is entitled to. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (citation omitted)); see also In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (holding that an "internal policy that treats all employees alike" is a factor supporting commonality under Rule 23(b)(3)); Villalpando v. Exel Direct Inc., 303 F.R.D. 588, 608 (N.D. Cal. 2014) (finding predominance satisfied where "the threshold questions as to all of Plaintiffs' claims—whether they are employees or independent contractors—is susceptible to common proof, at least with the clarification that all class members must have personally made delivered for Exel at some point during the class period"). And a class action is a superior vehicle for resolving these sixty-five claims because class-wide resolution of the employee/independent contractor classification issue "will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Accordingly, the Court certifies a settlement class consisting of all individuals who have personally made one or more deliveries for CEVA, while being classified by CEVA as an independent contractor, at any time between August 3, 2012 and February 14, 2017.

## II. Fairness and Adequacy of the Settlement

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, a court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel. Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

A. The Strength of Plaintiff's Case and Risk of Further Litigation.

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval. The disputed factual and legal issues would be complex and costly to resolve at trial. Both sides have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof, and the general difficulties and delays of litigation. These considerations led the parties to conclude that a timely settlement would be best for everyone involved. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (internal quotation marks and citation omitted). The Court concludes that the strength of the parties' positions as well as the risk of further litigation

militate in favor of approving the settlement.

B. The Settlement Amount.

After deducting various fees and expenses, the settlement fund offered to the class totals approximately $1,034,541. The average recovery for each class members will be $15,855.26. (Doc. No. 22-1 at PageID 428.) This settlement is outstanding when compared with other wage and hour settlements approved in recent years by federal courts sitting in California. See, e.g., Taylor v. Shippers Transp. Express, Inc., No. CV 13–02092–BRO (PLAx), 2015 WL 12658458, at *14–15 (C.D. Cal. May 14, 2015) (approving settlement of employee classification lawsuit bringing wage and hour claims, and describing $13,140.66 average class recovery "far above average" when "compared to settlements in similar cases"); Boyd v. Bank of Am. Corp., No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *5 (C.D. Cal. Nov. 18, 2014) (finding settlement with an average payout of $10,840 "ample," "impressive," and "greater than the settlement amounts in similar wage and hour class action[s] in this Circuit").

This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

C. The Extent of Discovery Completed and Stage of the Proceedings.

The parties settled this lawsuit fairly early in the proceedings, submitting the settlement for preliminary approval before any dispositive motion practice, and less than one year after the complaint was filed. "But a swift resolution does not mean the parties were unprepared to engage in settlement negotiations." In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig., MDL No. 2672 CRB (JSC), 2017 WL 2212783, at *16 (N.D. Cal. May 17, 2017). To the contrary, the parties conducted discovery prior to mediation, and obtained policy documents and data that allowed the parties to assess the relative strength of the class claims. (Doc. No. 16-4 at ¶¶ 13, 33–34.)

See Paz v. AG Adriano Goldschmeid, Inc., No. 14–cv–1372, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016) (approving early settlement where "the case had progressed enough to allow for a considered evaluation of the parties' positions" because the parties "had completed initial motions and participated in several status conferences with the Magistrate Judge"). The parties also had the benefit of probing one another's positions during mediation. Sciortino v. PepsiCo, Inc., No. 14–cv–00478–EMC, 2016 WL 3519179 (N.D. Cal. June 28, 2016) (approving settlement where case settled "relatively early, with no rulings on the merits" where "the parties did have the benefit of mediation briefs" and conducted limited discovery prior to settlement). The Court concludes that the parties conducted sufficient to discovery to allow them to make an informed decision to settle this case.

### D. The Experience and Views of Counsel.

Plaintiff's counsel has extensive experience acting as class counsel in wage and hour class actions. (See Doc. No. 16-4 at ¶¶ 3–6.) Class counsel recommends the settlement as both fair and adequate, a factor that weighs in favor of granting final approval.

### E. The Reaction of the Class Members to the Proposed Settlement.

To date, no class members have objected to the settlement or requested exclusion. (Doc. No. 22-1 at ¶¶ 10, 12.) The complete lack of objections is indicative of the adequacy of the settlement. See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Accordingly, the reaction of the class members weighs in favor of granting final approval.

### F. Collusion.

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Staton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects

of the settlement that lend themselves to self-interested action.

The $7,500 incentive award for Plaintiff William Cifuentes does not appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Id. at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Plaintiff has protected the interests of the class by assisting counsel in the development of this case, "including participating in several hours of in-person and telephonic interviews." (Doc. No. 20-1, Cifuentes Decl., ¶ 4–7.) Therefore, the $7,500 award to Plaintiff appears to be reasonable in light of his efforts in this litigation.

Additionally, the attorneys' fees do not appear to be the result of collusion. Plaintiff's counsel may simultaneously negotiate the merits of the action and attorneys' fees. Staton, 327 F.3d at 971. The attorneys' fees and litigation costs sought by Plaintiff's counsel are reasonable under the circumstances.

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960. Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.

**III. Attorneys' Fees, Expenses, and Incentive Payment to Class Representative**

With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases. Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number

of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Plaintiff has requested an award of $583,333 in attorneys' fees. The requested amount of attorneys' fees is 33% of the total settlement fund of $1,750,000. This is higher than the Ninth Circuit's 25% benchmark for common fund cases. Nevertheless, the overall award Plaintiff's counsel achieved for the class was quite favorable, and the risks of continuing to litigate this case were real and substantial. Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation. (Doc. No. 21-1, Konecky Decl. ¶ 53.) The requested fee award is in line with what other district courts in this Circuit have awarded in cases where class counsel took the case on contingency, and achieved a strong result for the class. See, e.g., Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1209–10 (C.D. Ca. 2014) (approving 33% fee award from common fund settlement where counsel took the case on contingency, and achieved an "exceptional result" for the class); Thieriot v. Celtic Ins. Co., No. C 10–04462 LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011) (approving 33% fee award where class took the case on contingency and "obtained quality results"); see also Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc., No. CV 13–4460–GHK (MRWx), 2016 WL 6156076, at *2–5 (C.D. Cal. Aug. 16, 2016).

Finally, class counsel has represented that the fees calculated under the lodestar method would be $173,864, and will come to roughly $195,000 by the time the case is finished. (Doc. No. 21-1 at ¶¶ 50, 52.) Thus, the amount class counsel requests ($583,333) is approximately three times what class counsel would receive under the lodestar method ($195,000). See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944-45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method). A multiplier of three is well

within the accepted range for common fund cases where class counsel has taken the case on a contingency fee arrangement. See Vizcaino, 290 F.3d at 1051 & n.6 (affirming multiplier of 3.65x in a common fund case, and noting that vast majority of common fund cases result in a multiplier of between one and four); In re Infospace, Inc., 330 F. Supp. 2d 1203, 1212 (W.D. Wash. 2004) ("When applying the lodestar method in common fund cases, a multiplier ranging from one to four is typically applied." (footnote omitted)). Accordingly, the Court concludes that the request for fees is reasonable and grants class counsel $583,333 in attorneys' fees.

Plaintiff has represented to the Court that class counsel has incurred litigation expenses in the amount of $9,996.90. (Doc. No. 21-1 at ¶¶ 54–56.) After reviewing counsel's declaration regarding expenses, the Court concludes that the requested litigation expenses are reasonable and grants class counsel's request for these fees.

Finally, the $7,500 incentive payment for class representative William Cifuentes is reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted). After reviewing these factors, the Court concludes that the requested incentive payment is reasonable. The $7,500 award is well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). Plaintiff William Cifuentes has protected the interests of the class by participating in several hours of in-person and telephonic interviews, reviewing counsel's pleadings, and assisting counsel with other aspects of the case. (Doc. No. 20-1 at ¶¶ 4–7.) Plaintiff also signed a broader release than other class members, further justifying enhanced consideration. Accordingly, the Court

approves the $7,500 incentive payment for Plaintiff William Cifuentes.

## **Conclusion**

The Court has jurisdiction over the subject matter of this action and all parties to the action, including all settlement class members. The Court certifies the settlement class and grants final approval of the settlement. All persons who satisfy the class definition are settlement class members bound by this judgment. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, including the Fifth Amendment's Due Process Clause.

The Court grants class counsel $583,333 in attorneys' fees and $9,996.90 in expenses. The Court grants class representative William Cifuentes an incentive payment of $7,500. The attorneys' fees, expense awards, and incentive payment will be paid out of the settlement fund created by Defendant CEVA.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement and all matters arising thereunder. This document satisfies Rule 58 of the Federal Rules of Civil Procedure. The Court dismisses the action with prejudice, and no costs shall be awarded other than those specified in this order, or provided by the settlement agreement. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

DATED: October 23, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT